UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re:                                                    Case No.: 16-13179-11

SPIN CITY EC, L.L.C.

Debtor.

## MEMORANDUM DECISION

This matter is before the Court on the Objection to Plan of Reorganization filed by JJC of Eau Claire, LLC ("JJC"). Spin City EC, L.L.C. filed this voluntary chapter 11 petition on September 15, 2016. This is a small business case. On June 20, 2017, the Debtor filed its Third Amended Plan ("Plan") and Disclosure Statement. On July 26, JJC objected to both. On August 3, 2017, the Debtor filed a Motion to Extend Time for Acceptance or Rejection of Debtor's Plan. On August 8, 2017, the Court denied the Debtor's Motion to Extend.

On August 30, 2017, the Debtor filed its Ballot Summary Report ("Report"). The Report shows Classes 1 and 3—representing Royal Credit Union's secured and unsecured claims—voted to accept the Plan, while JJC's Class 4 claim voted to reject and the Class 2 IRS claimholder did not respond.

### FACTS

Spin City EC, L.L.C. ("Spin City") is a single member limited liability company formed in 2010. It operates one self-service laundromat in Eau Claire. Spin City is owned and operated by Bruce Fuerbringer ("Fuerbringer"), who handles the day-to-day operations and does not take home a salary. Spin City's

assets consist primarily of commercial washers, dryers, and related laundry equipment that is nearing the end of their useful lives (the "Equipment"). The Debtor states in its Disclosure Statement the Equipment is worth $80,600. This is based on a City of Eau Claire personal property assessment. Nevertheless, the Debtor states the true value of the Equipment is $100,000 after taking into account going concern value. Based on the age of the collateral and the information regarding its useful life, the $100,000 value does not appear likely to be the value of RCU's collateral. Rather, the Debtor appears to overvalue the value of the Equipment and thus the secured Class 1 claim.

The Debtor effectively has two creditors: Royal Credit Union ("RCU") and JJC.[1] RCU's claim is a partially secured claim, and JJC's is totally unsecured. The Debtor's Plan proposes to pay RCU's $100,000 secured claim in full with interest, for a total of $2,800 per month. Once paid in approximately 39 months, the $2,800 per month would continue to be paid to RCU on what RCU and the Debtor agreed would be an unsecured claim of $100,000. This would result in a payment of $58,800, or 58.8% on the RCU unsecured claim. Contrast this with payments of $166.66 per month or a total of $10,000 or 13.3% toward JJC's $75,000 claim.

JJC holds a 2009 judgment against Clear Water Laundry Services, LLC, which was dissolved in 2011. JJC contends that Spin City is the continuation of Clear Water and therefore the judgment is also enforceable against Spin

---

[1] The only other creditors contemplated in the Third Amended Plan are the Internal Revenue Service with a claim in the amount of $101 and the Wisconsin Department of Revenue with a claim of $1,292.78.

City. The Debtor objected to JJC's claim on March 21, 2017, but later withdrew its objection. The Debtor apparently says it continues to dispute JJC's claim, but also states in its Plan that it intends to "buy its peace" by paying JJC $10,000 over the course of the Plan. The JJC claim is not subject to any on-going litigation.

Spin City filed its Third Amended Plan on June 20, 2017. Forty-five days later, on August 3, 2017, it moved to extend the deadline for acceptance or rejection of the Plan pursuant to section 1121(e)(3).

On August 10, 2017, this Court denied the Debtor's request to extend the deadline for acceptance of its Third Amended Plan and also denied final approval of the Disclosure Statement and confirmation. The Court further issued an order to show cause why this case should not be dismissed. At a hearing held on August 22, 2017, the Court denied the order to show cause on the condition and with the understanding that RCU intended to vote in favor of the Plan. RCU did so, and JJC and the Debtor filed briefs regarding whether the Third Amended Plan could be confirmed over JJC's objection.

## JURISDICTION

This Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

**DISCUSSION**

*1. Unfair Discrimination*

Under 11 U.S.C. § 1122, a plan may "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." The Code does not state whether a plan must classify similar claims together, and the Bankruptcy Court has broad discretion in classifying claims under section 1122. *In re Loop 76, LLC*, 465 B.R. 525, 536 (B.A.P. 9th Cir. 2012), *aff'd*, 578 F. App'x 644 (9th Cir. 2014). In determining whether claims are substantially similar, the court "must evaluate the nature of each claim, i.e., the kind, species, or character of each category of claims." *Id. See also In re Bloomingdale Partners*, 170 B.R. 984, 997 (Bankr. N.D. Ill. 1994) (reasoning the court may take into consideration the legal character of the claim and business reasons relevant to the success of the debtor).

The Seventh Circuit has not provided guidelines for determining whether claims are substantially similar under section 1122. It has, however, adopted the Fifth Circuit's "'one clear rule': 'thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on reorganization.'" *In re Woodbrook Assocs.*, 19 F.3d 312, 318 (7th Cir. 1994) (*quoting In re Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991)).

If the court ultimately finds the claims are not substantially similar, that ends the inquiry under section 1122. Otherwise, the plan may place similar claims in different classes if "there are 'good business reasons' to do so or if the

claimants have sufficiently different interests in the plan." *See In re Wabash*

*Valley Power Ass'n, Inc.*, 72 F.3d 1305, 1321 (7th Cir. 1995).

<em>a. Are the claims substantially similar?</em>

There is, as one court has phrased it, a "paucity of case law defining

what constitutes either similarity or substantial similarity of claims." *In re Loop*

*76, LLC*, 442 B.R. 713, 716 (Bankr. D. Ariz. 2010). In *Woodbrook*, the court

considered whether a general unsecured claim and an 1111(b) claim were

substantially similar under section 1122.  *See Woodbrook*, 19 F.3d at 318. The

court found they were not substantially similar, reasoning that an 1111(b)

claimholder has different rights in a chapter 11 than a chapter 7. In *Loop*, the

court determined that claims were dissimilar because one was backed by a

guarantee from a non-debtor third party. *See In re Loop 76,* LLC, 465 B.R. 525,

529 (B.A.P. 9th Cir. 2012); *aff'd*, 578 F. App'x 644 (9th Cir. 2014). In yet

another case, the court found claims dissimilar where (1) the claimholder held

a partially secured interest in debtor's assets and (2) the claimholder's claim

was still in the process of being litigated.  Though the cases provide little help

in the instant case, the emphasis of the analysis "is upon what type of claim

the holder has against the estate." *In re Sentinel Mgmt. Grp., Inc.,* 398 B.R. 281,

298 (Bankr. N.D. Ill. 2008).

The Court finds the claims held by JJC and RCU are substantially

similar. The Debtor argues the greatest dissimilarity between the claims is the

fact that JJC's claim is indefinite, contested, and disputed. But, JJC's claim is

*not* in fact disputed for purposes of plan confirmation. The Debtor filed an

5

objection to the claim, but later withdrew it. There is no objection to JJC's

claim. The proof of claim is prima facie evidence of the claim. The Debtor

rationalizes its withdrawal of the objection by claiming it hopes to save itself

money by buying its peace and paying JJC a small portion of its claim. But the

Debtor's rationalization does not affect the type of claim JJC has against the

estate. For purposes of plan confirmation, JJC holds an allowed and

undisputed claim.

The Debtor also argues the claims are distinguishable because RCU

could be a source of capital in the future and the Debtor needs to maintain a

good relationship with trade creditors. RCU is not, in the traditional sense, a

trade creditor. There is no evidence RCU is willing to lend to it in the future.

The statement is gratuitous speculation. Indeed, it appears the Debtor

anticipates RCU will not make further credit extensions as the Disclosure

Statement postulates that Fuerbringer, not RCU, will make loans to the Debtor

in periods of severe cash flow deficiencies.

The other factors courts have considered weigh on both sides of the

similarity analysis. RCU's claim is backed by a guarantor, but that guarantor is

Debtor's sole member, Fuerbringer, and is therefore not truly a third party

under *Loop.* The claims are also different because RCU's claim is partially

secured. On the other hand, JJC's claim has been fully litigated in state court

and JJC and RCU would hold the same interests in a chapter 7. Ultimately, the

claims held by JJC and RCU are "claims which enjoy similar rights and

privileges within the Bankruptcy Code," and their "different origins" do not

6

alone justify separate treatment. *Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship)*, 21 F.3d 477, 483 (2d Cir. 1994).

> b.  *Is there a good business reason for different treatment?*

Having found the claims are substantially similar, the Court must now consider whether the Plan may treat the claims differently. The inquiry on this prong hinges on whether the "Debtor has good business reasons" for placing JJC in a different class from RCU. *In re Draiman*, 450 B.R. at 792.

The Debtor argues it has an interest in maintaining a relationship with RCU. It asserts "common sense" suggests that RCU would lend to Debtor in the future if all or most of RCU's claim is paid. In response, JJC argues Debtor has proposed this Plan to protect Fuerbringer, who signed a personal guarantee on the RCU loan and who would be liable if RCU is not paid in full.

"The need to maintain good will for future operations" can, in some circumstances, be a good reason for separating similar claims. *In re Snyders Drug Stores, Inc.*, 307 B.R. 889, 893 (Bankr. N.D. Ohio 2004). But Debtor has failed to articulate a true need to maintain a relationship with RCU. RCU is only one of many potential lenders. The Debtor's unsupported assertion that RCU might be willing to extend credit in the future is speculation and not a valid justification for separating the RCU claim. Even if RCU would treat the Debtor more favorably if its claim is paid in full, the Debtor has failed to show that RCU is so "essential to [Debtor's] future" to justify the disparate treatment. *In re Boston Post*, 21 F.3d at 483.

7

As noted, the Seventh Circuit follows the "one clear rule" for plan confirmation: "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on reorganization." *In re Woodbrook Assocs.*, 19 F.3d at 318. Therefore, the Debtor cannot separate the claims for the sole purpose of ensuring it would receive an affirmative vote.

As structured, it appears the Debtor suggests the Class 1 RCU claim is unimpaired because it is being paid in full with interest on terms agreed to by RCU. If so and the JJC and RCU claims were combined, the Debtor would not meet the voting requirements for confirmation. Section 1126 (c) provides a class is deemed to accept a plan if it is accepted by creditors "that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class." There are only two claims in this class. Regardless of the amounts of the claims, RCU will only hold one-half of the claims in the class. The statute requires more than one-half. Therefore, even if the Debtor had proposed a plan that properly categorized JJC and RCU's unsecured claim into one class, it wouldn't have been confirmed. So long as JJC voted against confirmation, the Plan would not have had the requisite favorable vote from an impaired class.

It is possible that Debtor did not intentionally gerrymander votes, but the Debtor's intent is not relevant. *In re Bloomingdale Partners*, 170 B.R. at 996 ("[E]very plan proponent 'gerrymanders' to some extent; an examination of the plan proponent's intent is neither helpful nor feasible."). Rather, the question remains: how "far may the plan proponent go in drawing its boundaries?" *Id.*

Again, the Debtor has not articulated any valid reason for separating the

JJC and RCU unsecured claims. They are substantially similar. *Id.* (holding "it

is reasonable for the plan proponent to classify claims separately only if these

claims are not 'substantially similar'"). Without any rationale to support the

separation of the claims, Spin City has attempted to gerrymander its way into a

confirmed plan. Further, it seeks to unfairly and improperly prefer one

creditor—RCU—over other creditors—i.e., JJC.

For the foregoing reasons, the Court finds there are no good business

reasons to separate the RCU and JJC unsecured claims. The Plan unfairly

discriminates in violation of section 1122. Accordingly, Spin City's Third

Amended Plan cannot be confirmed.

2.      *The Absolute Priority Rule*

Spin City's Plan is deficient in yet another way. Under 11 U.S.C.

§ 1129(b)(1), a plan may be confirmed over the objection of an impaired class

only if the Plan "does not discriminate unfairly, and is fair and equitable" with

respect to each impaired class that did not accept the plan. Under 11 U.S.C.

§ 1129(b)(2)(B), a plan is fair and equitable if it provides that the dissenting

unsecured creditors will receive the full value of their claim before any junior

class of creditors receive or retain any property.  Together, these provisions of

section 1129 constitute the absolute priority rule.

JJC has objected to confirmation of Spin City's Plan on the grounds that

it violates the absolute priority rule because it permits Fuerbringer to retain his

ownership interest in Spin City. In response, the Debtor argues that

Fuerbringer's treatment in the Plan falls under an exception to the absolute

priority rule because he will be a source of new value contributions to Spin

City.

Though not codified, the new value exception to the absolute priority rule

has been recognized by countless courts. It provides that where there is an

infusion of new capital by the debtor or its principals, then equity holders may

retain their interest even though priority claimholders do not receive the full

value of their claims. *See Kansas City Terminal Ry. Co. v. Cent. Union Tr. Co.,*

271 U.S. 445, 455 (1926). The rationale behind the exception is that

"additional funds will be essential to the success of the [Debtor's reorganiza-

tion], and it may be impossible to obtain them unless stockholders are

permitted to contribute and retain an interest sufficiently valuable to move

them." *Id.*

In this case, the Debtor argues that Fuerbringer can retain his equity

interest because he will contribute new value to the Debtor through his

uncompensated labor. The Debtor also postulates Fuerbringer might contribute

new capital to the Debtor if necessary.

Courts have repeatedly rejected the Debtor's "sweat equity" theory as a

method for satisfying the absolute priority rule. In *Norwest Bank Worthington v.*

*Ahlers,* the Supreme Court reasoned that because a "promise of future services

cannot be exchanged in any market for something of value . . . *today*," it

cannot be used to satisfy the new value exception. 485 U.S. 197, 204 (1988).

*See also In re Custer,* No. 91-14576S, 1993 WL 7965, at *7 (Bankr. E.D. Pa.

Jan. 7, 1993) ("Even if a debtor's principals offer such services 'for free,' the value of such services cannot be considered in the measured value given by the Debtors which is necessary to . . . satisfy the [new value exception] of the [absolute priority rule]."). In that case, the Court considered a chapter 11 plan in which debtors proposed retaining an equity interest in their farm over objections of senior unsecured creditors. The *Norwest* debtors did not contribute capital to the farm; rather they provided only "labor, experience, and expertise." *Id.* at 197.

Under *Norwest*, Fuerbringer's promises to perform free labor and provide cash infusions to the Debtor cannot satisfy the new value exception to the absolute priority rule. To Fuerbringer's credit, he has apparently worked for Spin City without compensation for some time and it appears he sincerely intends to continue doing so. Ultimately, however, his promises to continue working for free and to provide cash infusions are "intangible, inalienable, and, in all likelihood, unenforceable." *Id.*  For that reason, they would be valueless if offered in a market and therefore cannot be used to satisfy the new value exception.

Nor could the Debtor allege that Fuerbringer does not obtain anything of value in the Plan, thereby sidestepping the absolute priority rule. The operating reports demonstrate that Spin City subsists on razor thin margins and often reports monthly net losses. By its own admission, the Debtor's primary assets—washers and dryers—are near the end of their useful lives and will need to be replaced soon. The Debtor might have some going concern value

11

based on the potential for future profits, but even that claim would be dubious given the numbers in the operating reports. In other words, Spin City is effectively worthless.

Nevertheless, Fuerbringer hopes to retain his interest in the LLC. While Spin City's balance sheets may reflect minimal value, Fuerbringer's equity interest would still constitute "property" under the Bankruptcy Code. Addressing this argument, the *Norwest* Court instructed that "[e]ven where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains 'property'. . . Indeed, even in a sole proprietorship, where 'going concern' value may be minimal, there may still be some value in the control of the enterprise." 485 U.S. at 207-08. As in *Norwest*, the Debtor in this case proposes to retain an equity interest in a near-valueless LLC. Fuerbringer may only retain a minimal amount of property, but it is enough to be cognizable as property under the Code and the Court therefore finds the Debtor's Plan violates the absolute priority rule.

### CONCLUSION

The Debtor's Third Amended Plan cannot be confirmed. The 45-day deadline for confirmation of a plan provided in 11 U.S.C. § 1129 has long passed. I cannot conclude it is more likely than not that the Court will confirm a plan within a reasonable period of time. Therefore, pursuant to 11 U.S.C. §§ 1129(e) and 1121(e)(3), I cannot continue the confirmation hearing. As such, the Debtor cannot file another plan and this case is dismissed.

This decision shall constitute findings of fact and conclusions of law

pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil

Procedure.

A separate order consistent with this decision will be entered.

Dated:  November 30, 2017

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge